Anderson, J.,
delivered the opinion of the court.
This is a suit brought by legatees against an adm’r, c. t. a., and his sureties, to recover their legacies. The testator, by his will, devised certain real estate to each of his three sons, John H., Samuel and Philemon; and he directs that other real estate particularly designated, shall be sold by his executors, in such manner as they shall deem most advisable; and that, at the end of the year, all his perishable estate and crops, together with four negroes, naming them, shall be sold, and out of the money arising from the sales of all the above property and money on hand, and all that may be due him at the end of the year, he directs his debts to be paid; and should there be any surplus money, after paying his debts, he gives it to his three sons, to be equally divided between them. His remaining negroes and other personal estate, or the chief part of it, he gives to his wife and daughters.
The will was admitted to probate, at a court held for Halifax county, on the 26th of April 1836; and on the 25th of July, of the same year, John O. Oabiness qualified as adm’r e. t. a.; and executed a bond with his sureties, in the penalty of $60,000, conditioned that he would make a true inventory of the goods, chattels and credits of the decedent, &c., and the same goods, chattels and credits would well and truly administer according to law, and make a just and true account of his actings therein, when thereunto required by said court; and further, that he would well and truly deliver all the legacies con *481 tained and specified in the said will, as far as the said goods, chattels and credits will extend, according to the value thereof, and as the law shall charge him.
The hill was filed in 1845, by Samuel Carter and Philemon Carter, infants under the age of twenty-one years, who sue by their next friend Charles B. Taliaferro, against the said John C. Cabiniss and his sureties and John H. Carter one of said legatees, who is made defendant; and the prayer is, that the court may direct a settlement of the account of the said John C. Cabiniss, as adminstrator with the will annexed of Samuel Carter dec’d,; and that the surplus, after satisfying the debts due by the testator at his death, arising from the sale of the lands and slaves aforesaid, and from the money on hand, and debts due the testator at his death, be distributed amongst the plaintiffs, and John H. Carter, according to the provisions of the will; and for general relief.
In the progress of the cause a reference was made to a master to state the administration account, and report to the court. He reported a balance due from the adm’r on the 1st of September 1848 of c$7,322 81, principal, and $5,901 52 interest, charging him with the proceeds of the real estate as well as personal; and $2,441 02 interest and $2,022 66 principal, deducting the real estate; to which he states should be added $750 principal, and $558 75 interest, cash alleged to have been retained out of the money left on hand by the decedent, by John H. Carter, if the court should be of opinion that he is chargeable therewith. The whole thus chargeable on the personal fund, divided into three equal parts, gave to each of the legatees $1,924 25, of which $999 92 was interest, and $924 33 was principal. To this report the plaintiffs filed various exceptions, and John H. Car *482 ter also excepted to the item of $750, and interest ther'eOU.
the 12th of April 1851, the court pronounced a decree in the cause, overruling the said exception of John H. Carter, and holding that the sureties of John C. Cabaniss as adm’r c. t. a. of Samuel Carter, are bound for the faithful administration of the personal part of the estate, decreed against the adm’r and his sureties, in favor of each of the plaintiffs, the sum of $1,924 25, with interest on $924 83, part thereof, from the 1st day of September 1848 till paid. It is also adjudged by the said decree, that the sureties are not bound, merely by reason of said bond, for the proceeds of the real estate sold by the administrator. And whether they are bound for so much thereof as may have been paid by the adm’r in satisfaction of the debts of his testator; and if bound, what was the amount so paid out of the proceeds of the sale of the real estate, are questions which are left open and undecided by said decree; as are also the questions arising upon the plaintiff’s exceptions to the commissioner’s report, which is recommitted, with directions to the commissioner to examine said exceptions, and to report thereon; who is also directed to state the account between John H. Carter and the adm’r, and to report the same.
It was earnestly contended by appellant’s counsel, that if the adm’r applied proceeds of the sale of lands to the payment of debts, the sureties are entitled to the benefit of such payments. This raises a question which was undecided by the said decree, and may be considered now. ■
The argument that the sureties cannot be held bound upon their bond, for any misapplication of the proceeds of the sale of lands, is undoubtedly true. But the claim is not to hold them responsible for a misapplication of *483 that fund. It was no misapplication, to apply it in payment of debts; for the sale of the land was required by the will, to raise a fund, which, together with the personal fund, should be applied to that purpose. Such application of it was no default on the part of the adm’r, and consequently could devolve no liability oh his sureties therefor, if or can they be held responsible for his failure to apply the proceeds of the land sold, to the payment of debts, as the law then stood, as they only undertook for the proper administration of the “ goods, chattels and credits.” But that does not seem to remove the difficulty or to meet it.. The sureties undertook that the administrator should apply the personal fund to the payment of debts; and the surplus, if any, to the payment of legacies.. It wras argued that the bond which they executed, only requiring them in terms to “ deliver” legacies, and omitting the word “pay,” should be taken to bind them only to deliver the specific legacies bequeathed by the will, of which there are several, and which it was appropriate to require to be delivered-, as the specific thing, not money, was bequeathed ;'and therefore it would have been wholly inappropriate to have required it tobe paid; and the term “delivered” was used as applicable to such legacies; and the word “ pay” being omitted, which only would be appropriate to the legacies sought to be recovered by this suit, it is fair to presume that the sureties intended only to be bound for the application of the fund in payment of debts, and for the delivery of the specific legacies, and not for the payment of legacies out of the fund created for the payment of debts and legacies over, if there should be a surplus. But, although the term “pay” would be more appropriate in reference to monied legacies, and would not be at all appropriate in relation to legacies which were not pecuniary, yet the word “deliver” is applicable to both *484 sorts ieSa°ieB- And it would be too rigid a construe tion to say that an obligation to deliver legacies, some of which were pecuniary, and others specific, did not bind the obligor to the payment of the pecuniary legacies. "WAadhere, therefore, to the assumption that the sureties undertook that the administrator should faithfully apply the personal fund to the payment of debts, and the surplus, if any, to the payment of legacies. And they are undoubtedly responsible for any default of the administratoi therein.
It was claimed by the plaintiffs in the court below, that certain disbursements made by the adm’r were made out of the proceeds of the sale of real estate, to wit: amount paid sheriff of Halifax $720, on the 27th of March, 1888; amount paid Bruce & Thomas, 26th of January 1841, $714.07; and amount paid James Bruce, 26th of December 1836, $825; and that these disbursements were improperly credited to the sureties, in the account which formed the basis of the decree of 12th of April 1851; and that, therefore, they were entitled to a decree against the sureties for those sums, with interest on them severally; and in support of their pretension, they relied upon the depositions of John C. Cabaniss and Thomas D. Heal, which are excepted to by the sureties, upon the ground of incompeteney, and upon other grounds. The record does not show that the court decided the question raised by the exceptions, as to the competency of these witnesses, but the final decree is for the said sums against the sureties, with interest upon them from the several dates of disbursement until payment.
It is shown by the record that the first item above mentioned, $720, was not credited to the adm’r in the account which formed the basis of the decree of the 12th of April 1851, and that the securities did not get the benefit óf a credit therefor, by said decree. It was, there *485 fore, clearly error to decree against them for that amount. But as to the whole, if the depositions of Cabaniss and Neal are excluded, the evidence does not show that the said disbursements were made out of the proceeds of land sales. It is material, therefore, to enquire whether those witnesses were competent.
Both witnesses married daughters of Samuel Carter, the elder, deceased, and sisters of Samuel Carter, jr., who was one of the plaintiffs in this suit, and died since its institution, without issue and unmarried, both of his said sisters surviving. They were, consequently, heirs and distributees of his estate, and are entitled to a distributive share of whatever recovery his administrator may have against the sureties of John C. Cabaniss in this suit; and are, consequently, directly interested in swelling the amount of that recovery.
The general rule of the common law is, that a party to the record in a civil suit cannot be a witness, either for himself or for a co-suitor in the cause. And the rule of the Eoman law was the same. 1 Greenl. Ev. § 329. The rule applies to all cases where the party has any interest at stake in the suit, although it be only a liability to costs, and excludes a proehein ami, a guardian, an executor, or adm’r, &c., Ibid. § 347. And, we apprehend, prevailed in courts of chancery, as well as in courts of law; though in the former parties, to the recordare subject to examination as witnesses, much more freely chan at law. In chancery the plaintiff may obtain an order, as of course, to examine a defendant, and a defendant a co-defendant; but it must be upon affidavit, not only that he is a material witness, but also that he is not interested on the side of the party seeking his testimony in the matter to which it is proposed to examine him. The rule as to trustees, executors, and other fiduciaries, has been changed by statute in Virginia, which provides *486 that no trustee, executor, or other fiduciary, shall be incompetent as a witness in any case, by reason only of Ms being a party thereto, or of his being liable for costs in respect thereof: but if liable to eosis he shall not be competent, unless some person undertake to pay the same. Code of 1849, p. 663, §§ 17 & 18. In this case John O. Cabaniss was liable for costs, and it does not appear that any one had undertaken to pay the same. But we do not propose to consider the question of his competency, upon the ground of his being a party to the suit, and liable for costs. It will be seen that the statute does not remove the objection to his competency upon the ground of interest, except only as to his being liable for costs. And we hold that he was incompetent if he had an interest in the recovery against the sureties, and his testimony tended to swell that recovery. That such was its tendency is unquestionable. Had-he no right or interest in the distributive share of his wife ?
According to the principles enunciated by this court, in Dold’s Trustee v. Geiger’s Adm’r, 2 Gratt. 98, he had an appreciable vendible interest therein, during coverture. Not an absolute title, but a legal right jure mariti, the possession being recovered during coverture; but charged with the equity of the wife to a settlement. Judge Stanard, who delivered the opinion, in which the other judges concurred, in that case, says: “ The interest of the wife is an equity, and covers so much of the property as may be necessary to satisfy her equity, and that of the husband is legal jure mariti to the surplus.” “Such are the respective interests of husband and wife, if the possession be recovered during coverture; and if before the recovery, or the judicial ascertainment or recognition of those rights, the coverture ceases by death, then in effect the beneficial interest devolves on the survivor; to the wife surviving, by virtue of her legal right of sur *487 vivorship; to the husband, by virtue of Ms right of administration to his wife. Both the husband and wife had a" direct interest in swelling the recovery against the sureties.
But it is contended that inasmuch as Cabaniss was liable for whatever recovery might be had against his sureties, his testimony to swell the recovery against them was against his own interest; and that whilst he had an interest in the right of his wife, he had a preponderating interest adversely, which rendered him competent. The testimony of the admT is not against himself. It has no tendency to swell the amount of the recovery against himself. That is not affected by his testimony, for he is responsible for the whole amount of assets which came into his hands, whether derived from the real or personal estate. The amount of the recovery against him will be the same, whether his testimony is excluded or not. He does not, therefore, testify against his interest. His liabilities are not increased by his testimony, while his sureties are; and it tends to swell the recovery against them, in which he and his wife have both a direct interest. We do not think, therefore, that his interest was neutralized. JTor do we think that he was a competent witness against his sureties, whose interests was adverse to his, because of his fiduciary relation to the plaintiffs, who were entitled to a disclosure of his acts and doings in his fiduciary character. It seems to me, therefore, that he was incompetent, on the ground of his own interest jure mariti.
But his wife would have been clearly incompetent as a witness. And it is an established principle that when the husband or wife is not a party to the record, but yet has an interest directly involved in the suit, and is thereby incompetent to testify, the other is also incom _ petent. It is also held, that the husband cannot be a *488 witness for or against his wife, in a question touching even her separate estate, in which he has no interest. 1 Greenl. Ev. § 341; Exparte James, 1 P. Wms. R. 611; 1 Burr. R. 424; Davis v. Dinwoody, 4 T. R. 678; Snyder v. Snyder, 6 Binn; Langley v. Fisher, 5 Beav. R. 443.
"We are of opinion, therefore, that neither John 0; Cabaniss nor Thomas D. Real was a competent witness in this case to swell the recovery against the sureties; and that excluding their testimony, it does not appear from the record what disbursements were made out of the realty, and what were made out of the personalty; and that there is error in the decree in charging the sureties with said sums, and interest thereon.
But the sureties are not entitled to be credited by the whole disbursement made out of the proceeds of land sales, and from the personal estate. They are responsible for the true and faithful administration of the personal fund. But that was mixed with the proceeds of the land sales. The testator by his will blended both into one common fund, for payment of debts and legacies over. And the sureties of the adm’r, are only hound for the true and faithful administration of so much of this common fund, as was derived from the personal estate. The administrator is clearly chargeable with the whole amount of his receipts, whether derived from land or personalty. But such is not the responsibility of his sureties. They are only responsible for the personal part of the fund which came into the hands of the administrator, and should be credited by disbursements made out of the personal fund. The money with which the disbursements were made, having been derived both^ from land, with which the sureties are not chargeable, and from personal estate, with which they are chargeable, it would not be right to give the sureties credit for the whole amount of disbursement. But the *489 fund derived from the realty, and personalty being mixed and blended, out of which the disbursements were made, upon what principle, or by what rule, can it be ascertained, what part of the disbursements shall be credited to the real estate, and what to the personal estate, and the extent of the sureties responsibility ?
In Elliott v. Carter & al., 9 Gratt. 541, 583, Lee, J., in whose opinion the other judges concurred, says: It seems to be settled that though personal property is applicable to the payment of debts before real property, when neither species is expressly charged by the terms of the will; yet when both are equally and expressly charged they stand on the same footing, and each must contribute its rateable share to the common burden. 9 Gratt. citing Dunk v. Fenner, 2 Russ & Mylne 557, 13 Cond., Eng. Ch. R. 170; Roberts v. Walker, 1 Russ & Mylne 752, 4 Cond. Eng. Ch. R. 644; Kidney v. Cousmaker, 1 Ves. jr. R. 444; 3 Beavan 479 & 576. Again, when the will creates a mixed and general fund from the proceeds of real and personal estate, and directs that fund to be applied in payment of debts and legacies, they shall answer the prescribed purpose pro rata, according to their respective values. L. Thurlow says, when a testator combines real estate with personal, generally the burdens of the personal estate would also be placed on the estate combined with it.
This just principle, it seems to me, is applicable to this case. The legatees are entitled to subject the whole fund in the hands of the administrator, after the payment of debts, to the payment of their legacies. That fund was derived in part from the sale of real estate, and in part from the sale of personal estate, monies in hand, and collected from debts due the testator. The latter is secured, the former is not. But both funds were so mixed and blended that it cannot, with any certainty, be ascertained *490 what debts were paid out of the one fund, and what were paid out of the other; nor, consequently, what part of the funds which the adm’r retains and is undisbursed was derived from the one source, which is secured, and how much from the other source, which is not secured. It would seem, therefore, to be just and equitable, both to the legatees and the sureties, that the balance of the common fund, in the hands of the administrator, shall answer the prescribed purpose, pro rata, according to their respective values; upon the principle that they were alike chargeable with the payment of the debts in that ratio.
"We are of opinion, therefore, that this cause should go back to a commissioner, who should be instructed to ascertain—1st: What is the amount, on the 1st of September, 1848, (the period taken by the decree of the 12th of April, 1851, for distribution) of the combined fund, derived from the sale of real estate and from personalty which came into the hands of the administrator. 2d: The total amount of legal disbursements made out of the combined fund. 3d: What amount of the combined fund was derived from real estate, and what amount was derived from personal estate.
4th. He should then ascertain by the rule of proportion, what part of the disbursements which have been made, was made out of the land fund, and what part was made out of the personal fund. And by the same ratio, he should ascertain whatproportion of the balance due from the adm’r on the said 1st day of September 1848, is chargeable to the land fund, and what proportion is chargeable to the personal fund. And one-third of the amount so chargeable to the personal fund, with interest on the principal sum thereof, from the 1st day of September 1848, is due from the sureties to each of the three legatees, the sons of Sam’l Garter the elder, dec’d, *491 or Ms representative, subject to a credit for the amount of the decree of 12th of April 1851, in favor of either of them, and for any payments which may have been made to them respectively, by the said administrator, or his sureties, or by either of them not embraced in said decree.
The amended bill charges that John O. Cabaniss, the adm’r, applied a portion of the proceeds óf the land sales to the purchase of a tract of land for himself, which he afterwards conveyed in trust to Claiborne H. Barksdale, to indemnity his sureties in his administration bond; and the bill seeks to subject that land to the payment of the balance due from the adm’r on acconnt of the proceeds of the real estate which came into his hands. The answer of Beverly Barksdale denies the allegation that said land was paid for by Cabaniss out of the assets of the estate; and calls for strict proof.
The only evidence to support the said allegation of the amended bill, is the testimony of John C. Cabaniss and Thomas D. Neal, both of whom are interested witnesses, and incompetent to give testimony in the cause, as has been shown. The allegation that John C. Cabaniss purchased and paid for the land in question out of the trust fund, being positively denied by the ■ answer, and being unsupported by legal testimony, it. was error to subject it to sale to satisfy the balance due the legatees from the administrator from the proceeds of the sales of real estate. And the same is liable to sale for the indemnity of the sureties, according to the terms of the deed from John C. Cabaniss, in trust to Claiborne H. Barksdale. We are of opinion, therefore, to reverse the decree of the 13th of November 1866; and that the cause should be remanded to the Circuit court of Pittsylvania, for further proceedings tc be had therein, in conformity with this opinion.
*492 The decree was as follows:
The court is of opinion, for reasons assigned in writing and filed with the record, that the decree of the Circuit court of Pittsylvania of the 13th of November 1866, is erroneous. It is therefore considered that the same be reversed and annulled; and that the appellees, Charles L. Powell, sheriff of the county of Pittsylvania, and as such adm’r of Samuel Carter, dec’d, out of the assets of his intestate unadministered, and Philemon JB. Carter and John H. Carter do pay to the appellants their costs expended in the prosecution of their appeal here. And the cause is remanded to the said Circuit court to direct an account, with instructions to the commissioner to ascertain and report—First: What is the amount on the 1st of September 1848, of the combined fund derived from the sale of real estate, and from personalty, which came into the hands of the administrator.
Second: The total amount of legal disbursements made out of the combined fund.
Third: What amount of the combined fund, was derived from real estate, and what amount was derived from the personal estate.
Fourth: Then to ascertain by the rule of proportion, what part of the disbursements, which have been made, was made out of the land fund; and by the same ratio, what proportion of the balance due from the adm’r on the said 1st day of September 1848, is chargeable to the land fund, and what proportion is chargeable to the personal fund. And one-third of the amount so chargeable to the personal fund, with interest on the principal sum thereof, from the 1st day of September 1848, is due from the sureties to each of the three legatees, the sons of Samuel Carter, the elder, dec’d, or his representative, subject to a credit for the amount of the decree *493 of 12th of April 1851, in favor of either of them, and for any payments which may have been made by them respectively, by the said adm’r or his sureties, or either of them, not embraced in said decree; and for further proceedings to be had therein in conformity with the principles declared in the opinion of this court filed with the record, in order to a final decree; in which proceedings, the sureties are to be allowed the proceeds of the sale of the tract of land conveyed by John C. Oabaniss to Claiborne H. Barksdale, for their indemnity as his sureties, according to the terms of said deed of tru3t.
Decree reversed.